FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

OCT 1 2 2001

JAMES W. McCORMACK, CLERK

By:_____
                                           DEP CLERK

IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
LITTLE ROCK DIVISION

CYNTHIA BOONE, Individually and as
Next Friend of ASHLEY BOONE                                    PLAINTIFF

vs.                              CASE NO. 4:01CV0068*5*

STATE OF ARKANSAS, DEPARTMENT OF HEALTH
and CABOT SCHOOL DISTRICT                                   DEFENDANTS

## SEPARATE DEFENDANT'S BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS AND IN THE ALTERNATIVE MOTION TO DENY THE PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION

### FACTS OF THE CASE

Cynthia Boone is bringing the present action after the Cabot School District informed

Ashley Boone, on or about October 1, 2001, that she could no longer attend Cabot Senior High

because she did not have a Hepatitis - B vaccination.  Ms. Boone raised an objection to Ashley

being immunized for Hepatitis - B as it was, in the opinion of Ms. Boone, "contrary to the desire

of God and also violated the biblical teaching that the body should be treated as a temple."  The

Cabot High School provided Ms. Boone with an application, developed by the Arkansas

Department of Health ("Department") and used for the purpose of evaluating religious

exemptions, and she discussed her religious concerns with a Methodist minister who advised her

"that immunizations were not against the tenets of the Methodist faith to allow a vaccination. . .

." (See Paragraph 3 of Affidavit of Cynthia Boone attached to the Plaintiff's Complaint as

Exhibit "E").  It is noteworthy that Ms. Boone claims no affiliation with any church, but that her

beliefs come from revelations that she receives on a regular basis from God and from her

personal relationship with God.

1

Ms. Boone never completed the application provided to her and instead, through her attorney, wrote a letter to the Department on October 4, 2001 requesting a religious exemption based on her personal beliefs.  Mr. Karber, attorney for Plaintiff, pointed out in his letter what he perceived to be fatal constitutional defects in the procedure established by the Department in its quest to fulfill its duty in approving religious exemptions. (See Letter of Mr. Karber attached to the Plaintiff's Complaint as Exhibit "C").

The Department responded on October 8, 2001 to Mr. Karber's letter.  In the Department's response it was pointed out that the statute, relied upon by the Department and duly adopted by the Arkansas General Assembly, allows only for an exemption if "the parents or legal guardian of that child object thereto on the grounds that immunization conflicts with the religious tenets and practices of a recognized church or religious denomination of which the parent or guardian is an adherent or member."  (See Response of Department attached to the Plaintiff's Complaint as Exhibit "D").

Following the Department's response, the Plaintiff brings the present action before this Court.

## ARGUMENT

### THE DEPARTMENT LACKS THE AUTHORITY TO GRANT RELIGIOUS EXEMPTIONS BASED ON PERSONAL BELIEFS

The Arkansas General Assembly passed Act 244 of 1967 requiring all children, except as otherwise provide by law, to be properly immunized prior to being admitted to a public or private school.  The Act provided for no religious exemption.  Six years later, the General Assembly passed Act 633 during its 1973 legislative session.  The language of Act 633, as codified at Ark. Code Ann. § 6-18-702(d)(2), states:

> The provisions of this section shall not apply if the parents or legal guardian of
> that child object thereto on the grounds that immunization conflicts with the
> religious tenets and practices of a recognized church or religious denomination of
> which the parent or guardian is an adherent or member.

(emphasis added).

The plaintiff makes no argument that the language is vague or difficult to understand, and it is hard to conceive how it could be read as being anything but clear and unambiguous. Any person applying for a religious exemption must be an adherent or member of a recognized church or religious denomination. In the present case, Ms. Boone explicitly states that she is not a member of any church and feels that she is entitled to an exemption based on her personal beliefs. Her request cannot be honored based on the clear language of the statute. The Department is charged with implementing the laws that the General Assembly duly adopt; the Department does not have the authority to rewrite the statute to suit the needs or wishes of the Plaintiff.

## THE PRECISE ISSUES RAISED BY THE PLAINTIFF HAS BEEN REJECTED BY THIS COURT

The Plaintiff is asking this Court to find that Arkansas' religious exemption is unconstitutional. The Plaintiff does not want the Court to stop at such a finding. On the contrary, the Plaintiff also wants this Court to rewrite the statute in a way that would suit her individual needs. Namely, she is requesting that her personal beliefs should suffice for the purpose of being granted a religious exemption.

This precise issue was addressed in an unpublished opinion written by Judge Elsijane T. Roy (See Order attached as Exhibit "A"), a copy of which was forwarded to the Plaintiff prior to this case being filed. Judge Roy held, in George Forbes, Christian Student v. Secretary William Bennett, et al., No. LR-C-87-97 (E.D. Ark. October 21, 1987), that Arkansas' religious

exemption, and how it was administered by the Department, did not violate the Establishment Clause of the United States Constitution.

The Department recognizes that the opinion of Judge Roy is unpublished; however, the precedent of the opinion should not be disregarded.  In Anastasoff v. United States, 223 F.3d 898 (8th Cir. 2000) *vacated as moot*, 235 F.3d 1054 (8th Cir. 2000) (en banc), Judge Richard Arnold discussed at length the significance and reverence that unpublished opinions should receive.  In Anastasoff, Judge Arnold opined that 8th Circuit Rule 28A(i) that declares that unpublished opinions are not precedent was unconstitutional under Article III.  As noted above, that case was vacated as moot; however the logic in Judge Arnold's opinion is unquestionable.  Judge Arnold wrote:

> Cases can be overruled. Sometimes they should be. On our Court, this function can be performed by the en banc Court, but not by a single panel. If the reasoning of a case is exposed as faulty, or if other exigent circumstances justify it, precedents can be changed. When this occurs, however, there is a burden of justification. The precedent from which we are departing should be stated, and our reasons for rejecting it should be made convincingly clear. In this way, the law grows and changes, but it does so incrementally, in response to the dictates of reason, and not because judges have simply changed their minds.

Anastasoff at 904-905.

Judge Roy's decision should not be dismissed or ignored.  After a full evidentiary hearing, Judge Roy scrutinized the very issues that are in the present case and ruled that Arkansas' religious exemption statute did not violate the Establishment Clause of the First Amendment.

## THE PLAINTIFF LACKS STANDING

The Plaintiff states that the decision rendered in Sherr v. northport-East Northport Union Free School District, 672 F.Supp. 81 (E.D.N.Y. 1987) is a perfect road map for the issues in this

case. For a variety of reasons, the Department finds the <u>Sherr</u> decision to be inapplicable to the present case. One of the issues raised in <u>Sherr</u> was standing.

The Plaintiff, who concedes that she is not a member of any "recognized church or religious denomination" is asking this Court to rule that her daughter is entitled to an exemption from immunization based on her personal religious beliefs. However, if this Court finds that Arkansas' limitation of religiously based exemption to members or adherents of a "recognized church or religious denomination" violative of the First Amendment's guarantees of religious liberty, it follows that the entire religious exemption will be struck down in its entirety. If it is struck down, no exemption would remain and Ms. Boone's daughter would still be subject to requirement that she be immunized. Since the remedy that the Plaintiff seeks cannot redress the injury she alleges, she lacks standing.

The Plaintiff will point out that standing was addressed in <u>Sherr</u> and was specifically rejected. However, the precedence relied upon in <u>Sherr</u> is inapplicable to the present case and in fact is contradictory to the case law that this Court should rely on. The <u>Sherr</u> decision did quote a New York statute that could be considered a general severability statute; however, that court seemed to ignore the very statute that it quoted. Arkansas has a similar statute:

> Ark. Code Ann. § 1-2-117. Severability of Code Revisions.
> Except as otherwise specifically provided in this Code, in the event any title, subtitle, chapter, subchapter, section, subsection, subdivision, paragraph, subparagraph, item, sentence, clause, phrase, or word of this Code is declared or adjudged to be invalid or unconstitutional, such declaration or adjudication shall not affect the remaining portions of this Code which shall remain in full force and effect as if the portion so declared or adjudged invalid or unconstitutional was not originally a part of this Code.

Ark. Code Ann. § 1-2-117.

If this Court accepts the arguments of the Plaintiff and finds the wording of the exemption statute unconstitutional, that specific language should be stricken from the statute.

Judge Roy addressed this precise issue in Forbes. As noted earlier, Judge Roy wrote, "Even if the Court were to find the religious exemption statute unconstitutional, the immunization statute would remain unimpaired." Judge Roy further stated:

> Under Arkansas law, the test for determining whether the provisions of a legislative enactment are severable is whether the provisions are so connected together in meaning that it cannot be presumed that the legislature would pass one without the other. Smith v. Bentley, 493 F.Supp. 916 (E.D. Ark. 1980). Hanzel v. Arter, 625 F.Supp. 1259 (S.D. Ohio 1985). The Court believes that [Ark. Code Ann. § 6-18-702], providing for mandatory immunization for public and private school students, would have been enacted without an exemption provision. Based upon this finding, plaintiff would be required to submit to the immunizations even if the religious exemption statute was found to be unconstitutional.

Forbes at 9.

The Sherr decision is the only case that the Plaintiff points to for the proposition that this Court should not only strike the language they believe is objectionable, but should insert language allowing for a person's personal belief to qualify for an exemption. However, in Sherr, the court relied heavily upon New York state court decisions that allowed for personal beliefs to suffice despite the plain language of the New York statute. There are no cases that the Department is aware of in Arkansas that stand for a similar proposition. On the contrary, Arkansas courts have specifically rejected personal religious beliefs as an avenue for avoiding immunization regulations and laws. See Cude v. State, 237 Ark. 927 (1964); Wright v. DeWitt School District, 238 Ark. 906 (1965). Admittedly, these cases were decided prior to any religious exemption being in effect.

Other courts have also denied petitioner's request to rewrite statutes similar to Arkansas' statute. In Davis v. State, 294 Md. 370 (1982), the Maryland Court of Appeals was faced with essentially the same argument that the Plaintiff brings in this case. The Maryland court specifically rejected the reasoning in Maier v. Besser, 341 N.Y.S. 2d 411 (1972); the same

language that <u>Sherr</u> relied upon. This is the same reasoning that the Plaintiff relies on in this

case. In rejecting that line of reasoning, the Maryland court stated:

> The construction of § 7-402 (b) urged by the petitioner Davis is not reasonable; it
> is not permitted by the statutory language. The General Assembly expressly
> limited the exemption to members or adherents of a recognized church or
> religious denomination opposing immunization. To exercise the phrase "the tenets
> and practice of a recognized church or religious denomination of which he is an
> adherent or member," and insert the phrase "his religious beliefs," as contended
> for by the petitioner, would be to re-draft the statute under the guise of
> construction. In the language of Justice Harlan dealing with a similar contention,
> it would be "to assume an Alice-in-Wonderland world where words have no
> meaning," *Welsh v. United States,* 398 U.S. 333, 354, 90 S.Ct. 1792, 26 L.Ed.2d
> 308 (1970) (concurring opinion). This we decline to do.

<u>Davis</u> at 378. <u>Also,</u> <u>See</u> <u>Brown v. Stone,</u> 378 So.2d 218 (Miss. 1979).

The holding of the <u>Sherr</u> decision is inapplicable to the present case, and if the court finds

the language in the statute unconstitutional, the language should be stricken and the injury

alleged cannot be redressed by the remedies that the Plaintiff seeks. In that event, the Plaintiff

would lack standing.

### THE PLAINTIFF'S REQUEST FOR A TEMPORARY RESTRAINING ORDER AND/OR PRELIMINARY INJUNCTION SHOULD BE DENIED

The Plaintiff should not be granted a Temporary Restraining Order and/or Preliminary

Injunction. The Court must consider four factors: (1) probability of success on the merits; (2)

threat of irreparable harm; (3) the balance between this harm and potential harm to others if relief

is granted; and (4) the public interest. <u>See</u> <u>Dataphase Sys., Inc. v. C L Sys., Inc.,</u> 640 F.2d 109,

113 (8th Cir. 1981) (en banc).

If Judge Roy's decision is followed, or if the Court accepts the holding in virtually every

similar case decided in the various state or federal courts with the exception of the <u>Sherr</u> decision

that the Plaintiff relies so heavily on, the plaintiff must fail to succeed on the merits of her case.

Although <u>Dataphase</u> stands for the proposition the equities should be balanced, that decision

never stood for the proposition that an injunction should be granted when the movant will not succeed on the merits. "Rather, likelihood of success is relevant to the issuance of a preliminary injunction 'because the need for the court to act is, at least, in part, a function of the validity of the applicant's claim." Sharp v. Parents In Community Action, 172 F.3d 1034, 1039 (8th Cir. 1999). (*quoting* 11A Wright, Miller & Kane, Federal Practice & Procedure: Civil 2D § 2948.3, at 184 (1995)). Even if a small likelihood of success exists, the Plaintiff's motion should be denied after all elements of Dataphase are analyzed.

(1) Probability of Success on the Merits

For all the reasons stated above, the Plaintiff should not succeed on the merits of her case.

(2) Threat of Irreparable Harm

The Department will concede that the Court should consider carefully the threat of irreparable harm when First Amendment freedoms are at issue. However, if, as the Department contends, the provisions of Arkansas' religious exemption are not violative of the First Amendment, no other constitutional question remains. It has long been settled that the state can enforce compulsory immunization programs, with or without a religious exemption. Jacobson v. Massachusetts, 197 U.S. 11 (1905); Zucht v. King, 260 U.S. 174 (1922).

(3) The Balance Between the Threat of Irreparable Harm and Potential Harm to Others If Relief is Granted.

The Plaintiff argues that the only hardship either party will face is that Ashley will suffer from a loss of education. The Plaintiff dismisses the remarkable medical benefits that society has enjoyed as a result of modern immunization programs, particularly in school-aged populations. Indeed, one of the most effective tools of modern preventive medicine is the ability to immunize people against dangerous, crippling and deadly diseases. The only effective method

to achieve a wide based immunization rate has been through the enactment of laws making immunization mandatory against certain diseases. Enforcement of laws through the exclusion of unvaccinated children from school is a critical factor in assuring success.

(4) The Public Interest

The public interest and the harm in granting the Plaintiff's wishes are inextricably intertwined in this matter. As discussed above, the public interest lies in the preservation of the state's compulsory immunization program.

## CONCLUSION

Wherefore, for the reasons stated more fully above, Defendants respectfully request that their Motion be granted and that Separate Defendant, the Arkansas Department of Health, be dismissed from the present case, and for all other relief to which they may be entitled.

Respectfully submitted,

ROBERT M. BRECH, #98245
Associate General Counsel
Arkansas Department of Health
4815 W. Markham Street, Slot 31
Little Rock, AR 72205-3867
Phone (501) 661-2297
Attorney for the Arkansas Dept of Health

CERTIFICATE OF SERVICE

I, Robert M. Brech, certify that I have served via facsimile and by U.S. mail, postage prepaid, a true and correct copy of the above and foregoing document on this 12th day of October 2001 to:

Gregory T. Karber, Esq.
Pryor, Robertson & Barry, P.L.L.C.
P.O. Drawer 848
Fort Smith, AR 72092-0848
Attorney for Plaintiff
Fax (501) 785-0254

Robert T. Moxley, Esq.
Gage & Moxley
P.O. Box 1223
Cheyenne, Wyoming 82003
Attorney for Plaintiff
Fax (307) 632-0401

William C. Brazil, Esq
913 Oak St.
Conway, AR 72032
Attorney for Cabot School District
Fax (501) 327-2183

Robert M. Brech