FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 15 2002

JAMES W. McCORMACK, CLERK
By:_____
                    DEP CLERK

## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### WESTERN DIVISION

CYNTHIA BOONE, Individually and as
Next Friend of ASHLEY BOONE

                                                    PLAINTIFF

vs.                          CASE NO. 4:01CV00685 SWW

FAY BOOZMAN, in his official Capacity;
JOHN DOE 1 through JOHN DOE 20,
in their Official Capacities as agents, servants, employees
or Officials of the State of Arkansas, Department of Health;
and CABOT SCHOOL DISTRICT                        DEFENDANTS

### SEPARATE DEFENDANT'S BRIEF IN SUPPORT OF HIS
### MOTION FOR SUMMARY JUDGMENT

### STATEMENT OF FACTS

Cynthia Boone is bringing the present action after the Cabot School District, on or about

October 1, 2001, informed her that her daughter Ashley could no longer attend Cabot Senior

High because she did not have a Hepatitis - B vaccination. Ms. Boone raised an objection to

Ashley being immunized for Hepatitis - B as it was, in the opinion of Ms. Boone, "contrary to

the desire of God and also violated the biblical teaching that the body should be treated as a

temple." The Cabot High School provided Ms. Boone with an application, developed by the

Arkansas Department of Health ("Department") and used for the purpose of evaluating religious

exemptions. She also discussed her religious concerns with a Methodist minister who advised

her "that immunizations were not against the tenets of the Methodist faith to allow a vaccination.

. . ." It is noteworthy that Ms. Boone claims no affiliation with any church, but that her beliefs

come from revelations that she receives on a regular basis from God and from her personal

relationship with God.

Ms. Boone never completed the application provided to her and instead, through her attorney, wrote a letter to the Department on October 4, 2001 requesting a religious exemption based on her personal beliefs. Mr. Karber, attorney for Plaintiff, pointed out in his letter what he perceived to be fatal constitutional defects in the procedure established by the Department in its quest to fulfill its duty in approving religious exemptions.

The Department responded on October 8, 2001 to Mr. Karber's letter. In the Department's response it was pointed out that the statute, relied upon by the Department and duly adopted by the Arkansas General Assembly, allows only for an exemption if "the parents or legal guardian of that child object thereto on the grounds that immunization conflicts with the religious tenets and practices of a recognized church or religious denomination of which the parent or guardian is an adherent or member."

Following the Department's response, the Plaintiff brought the present action before this Court.

## STANDARD OF REVIEW

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment may be granted if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986). Federal Rule of Civil Procedure 56 mandates the entry of summary judgment against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).

The Eighth Circuit Court of Appeals noted, after the examination of a series of United States Supreme Court decisions, that "[the court] should be somewhat more hospitable to

summary judgments than in the past.  The motion for summary judgment can be a tool of great

utility in removing factually insubstantial cases from crowded dockets, freeing courts' trial time

for those cases that really do raise genuine issues of material fact." *City of Mount Pleasant v.*

*Associated Electric Cooperative, Inc.*, 838 F. 2d 268, 273 (8th Cir. 1988).  In addition, the Eighth

Circuit explained that "summary judgment need not be denied 'merely to satisfy a litigant's

speculative hope of finding some evidence that might tend to support a complaint.'" *Krenick v.*

*County of Le Sueur*, 47 F.3d 953, 959 (8th Cir. 1995) (citations omitted).

## ARGUMENT

### I.  Compulsory Immunization Laws are Constitutional

The threshold question, and the easiest question, for this Court is whether Arkansas may

require students to be immunized prior to their enrollment in public or private schools.  Dr. Fay

Boozman ("Defendant") will continue to rely upon the decision of the United States Supreme

Court in *Jacobson v. Commonwealth of Massachusetts*, 197 U.S. 11, 25 S.Ct. 358, 49 L.Ed. 643

(1905), a case which held that the State possesses the sufficient police power to require

mandatory vaccination.  *Jacobson* is not an obscure early twentieth century case that was

decided and forgotten until this case was filed.  It has been cited by the United States Supreme

Court at least 74 times; it has been cited by every Circuit in the United States at least 145 times;

and it has been cited to hundreds of times by courts in nearly every state.

The Plaintiff's attorneys should be well aware "that a state has the authority to enact a

mandatory immunization program through the exercise of its police power." *LePage v. State*,

2001 WY 26, 18 P.3d 1177 (Wyo. 2001) (*quoting Jacobson*) (a Wyoming case argued before the

Wyoming Supreme Court by Mr. Moxley).  Although *Jacobson* has been cited to hundreds of

times, its holding has never even been questioned.  The United States Supreme Court later found

it was permissible to exclude children from public and private school who have not been properly immunized. *Zucht v. King*, 260 U.S. 174 (1922).

The next question for the Court to answer is if it is permissible to require compulsory immunization despite personal religious objections. The Plaintiff may argue that this Court should administer the compelling interest test. However, the Supreme Court restricted the use of the compelling interest test and answered this question in *Employment Div., Ore. Dept. of Human Res. v. Smith*, 494 U.S. 872 (1990). The Supreme Court stated:

> If the "compelling interest" test is to be applied at all, then, it must be applied across the board, to all actions thought to be religiously commanded. Moreover, if "compelling interest" really means what it says (and watering it down here would subvert its rigor in the other fields where it is applied), many laws will not meet the test. Any society adopting such a system would be courting anarchy, but that danger increases in direct proportion to the society's diversity of religious beliefs, and its determination to coerce or suppress none of them. Precisely because "we are a cosmopolitan nation made up of people of almost every conceivable religious preference," *Braunfeld* v. *Brown*, 366 U.S., at 606, and precisely because we value and protect that religious divergence, we cannot afford the luxury of deeming *presumptively invalid*, as applied to the religious objector, every regulation of conduct that does not protect an interest of the highest order. The rule respondents favor would open the prospect of constitutionally required religious exemptions from civic obligations of almost every conceivable kind — ranging from compulsory military service, see, *e. g., Gillette v. United States,* 401 U.S. 437 (1971), to the payment of taxes, see, *e. g., United States* v. *Lee, supra;* to health and safety regulation such as manslaughter and child neglect laws, see, *e. g., Funkhouser* v. *State,* 763 P.2d 695 (Okla. Crim. App. 1988), compulsory vaccination laws, see, *e. g., Cude* v. *State,* 237 Ark. 927, 377 S.W.2d 816 (1964), drug laws, see, *e. g., Olsen* v. *Drug Enforcement Administration,* 279 U.S. App. D.C. 1, 878 F.2d 1458 (1989), and traffic laws, see *Cox* v. *New Hampshire,* 312 U.S. 569 (1941); to social welfare legislation such as minimum wage laws, see *Tony and Susan Alamo Foundation* v. *Secretary of Labor,* 471 U.S. 290 (1985), child labor laws, see *Prince* v. *Massachusetts,* 321 U.S. 158 (1944), animal cruelty laws, see, *e. g., Church of the Lukumi Babalu Aye Inc.* v. *City of Hialeah,* 723 F. Supp. 1467 (SD Fla. 1989), cf. *State* v. *Massey,* 229 N.C. 734, 51 S.E.2d 179, appeal dism'd, 336 U.S. 942 (1949), environmental protection laws, see *United States* v. *Little,* 638 F. Supp. 337 (Mont. 1986), and laws providing for equality of opportunity for the races, see, *e. g., Bob Jones University* v. *United States,* 461 U.S. 574, 603-604 (1983). The First Amendment's protection of religious liberty does not require this.

*Id.* at 888 – 889 (emphases added).

It is clear that the Supreme Court considers it a civic obligation to abide by compulsory vaccination laws and that compulsory vaccination laws are not violative of the First Amendment despite personal religious beliefs. It is noteworthy that the Supreme Court chose to cite the *Cude* case among the many immunization cases decided in the country. *Cude* not only stood for the proposition that compulsory immunization of children prior to their attending school in Arkansas was permissible despite religious objections, it allowed the State to take custody of Mr. Cude's children for the sole purpose of vaccinating his children. This was done despite Mr. Cude's contention that if the children were taken from him and vaccinated he would not accept them back. Cude at 930. It would be difficult to find a more severe state action involving compulsory immunization despite the religious based objections of the parents.

"As described succinctly by Justice Frankfurter in *Minersville School Dist. Bd. of Ed.* v. *Gobitis,* 310 U.S. 586, 594-595 (1940): 'Conscientious scruples have not, in the course of the long struggle for religious toleration, relieved the individual from obedience to a general law not aimed at the promotion or restriction of religious beliefs. The mere possession of religious convictions which contradict the relevant concerns of a political society does not relieve the citizen from the discharge of political responsibilities (footnote omitted).'" *Smith* at 879.

Undeniably, Arkansas may mandate compulsory immunization prior to children attending school despite religious objections.

## II. Arkansas's Religious Exemption is Constitutional.

Given that Arkansas possesses the power to require compulsory immunization prior to their attendance in public or private school despite the religious objections of parents, the only

remaining question involves the existing religious exemption found in Arkansas's immunization law. Ark. Code Ann. § 6-18-702(d)(2), states:

> The provisions of this section shall not apply if the parents or legal guardian of that child object thereto on the grounds that immunization <u>conflicts with the religious tenets and practices of a recognized church or religious denomination of which the parent or guardian is an adherent or member.</u>

(emphasis added).

At first blush, it would be hard to argue that this exemption would not be violative of the First Amendment. However, the Defendant believes that this exemption is a permissible accommodation of religion and thus does not transgress the Establishment Clause. The proper standard to apply is the three-part test set forth by the Supreme Court in *Lemon v. Kurtzman*, 403 U.S. 602, 612-13 (1971). Under the *Lemon* test, a law is permissible under the Establishment Clause only if: (1) it has a secular legislative purpose, (2) its primary effect is neither to advance nor to inhibit religion, and (3) it does not foster excessive government entanglement with religion. *Id.* at 612-13.

## A. Arkansas's Religious Exemption Serves a Secular Purpose.

"*Lemon* requires first that the law at issue serve a 'secular legislative purpose.' *Id.* at 612. This does not mean that the law's purpose must be unrelated to religion — that would amount to a requirement 'that the government show a callous indifference to religious groups,' *Zorach* v. *Clauson,* 343 U.S. 306, 314 (1952), and the Establishment Clause has never been so interpreted." *Corporation of Presiding Bishop v. Amos*, 483 U.S. 327, 335 (1987). Rather, *Lemon's* "purpose" requirement aims at preventing the relevant governmental decisionmaker from abandoning neutrality and acting with the intent of promoting a particular point of view in religious matters. *Amos* at 335.

"This neutrality, however, 'do[es] not require the government to be oblivious to impositions that legitimate exercises of state power may place on religious belief and practice.' *Board of Educ. of Kiryas Joel Village Sch. Dist. v. Grumet*, 512 U.S. 687, 705 (1994). Accordingly, the alleviation of a special, government-created burden on religious belief and practice constitutes a valid secular purpose under Lemon." *Children's Healthcare v. Min De Parle*, 212 F.3d 1084 (8th Cir. 2001), cert. denied, 532 U.S. 957 (2001) (emphasis added).

Absent the religious exemption granted by the Arkansas General Assembly, pressure would be imposed upon certain individuals to become immunized. Because the exemption alleviates this burden by enabling such individuals to attend school, it reflects a valid secular purpose.

**B. The Exemption's Primary Effect does not Advance nor Inhibit Religion.**

The second part of the *Lemon* test requires that the law's primary effect be neither to advance nor to inhibit religion. "[L]egislation does not violate the second part of the *Lemon* test merely because it gives special consideration to a religious group or even because it better enables a religious institution to advance its cause. Instead, a religious accommodation impermissibly advances or inhibits religion only if it imposes a substantial burden on nonbeneficiaries or provides a benefit to religious believers without providing a corresponding benefit to a large number of nonreligious groups or individuals." *Children's* at 1095 (citations omitted).

The only potential burden on nonbeneficiaries is the increased health risks to those who have not been immunized due to medical contraindications or those who have been immunized and did not gain the benefit of the vaccine. The legislature, by limiting the number of individuals that would qualify for the exemption, has kept that risk to a minimum. Each year the

Department grants approximately 400 exemptions. The Plaintiff would ask this Court to rewrite the statute and expand this exemption to an unknown number of individuals such as the Plaintiff who profess personal religious beliefs. As it is written, the exemption does impose some burden of nonbeneficiaries, however, any such burden is too minimal to violate the second part of the *Lemon* test.

The next prong of the second part of *Lemon* requires an examination to determine if the exemption provides a benefit to those exempted without providing a corresponding benefit to a large number of <u>nonreligious</u> groups or individuals. The only benefit that is conferred on those qualified for an exemption is the ability to attend school. The same benefit that immunized children enjoy. In fact, they will be attending school without the "benefit" of being properly immunized. Arkansas has accommodated, to the extent compatible with a comprehensive vaccination program, the religious beliefs of parents with religious objections. The fact that Arkansas has chosen to limit its exemption to members of recognized churches or religious denominations does not violate the second test. *See United States v. Lee,* 455 U.S. 252 (1982).

## C. The Exemption does not Foster Excessive Government Entanglement.

The third part of the *Lemon* test requires that the law not foster excessive government entanglement with religion. This is the least problematic of the tests.

The Department is charged with the responsibility of determining which applicants qualify for an exemption. That process entails determining who is a member of a recognized church. The Eighth Circuit has accepted fourteen criteria as a guide, helpful in deciding what constitutes a church. The fourteen criteria include:

(1) a distinct legal existence;

(2) a recognized creed and form of worship;

(3) a definite and distinct ecclesiastical government;

(4) a formal code of doctrine and discipline;

(5) a distinct religious history;

(6) a membership not associated with any other church or denomination;

(7) an organization of ordained ministers;

(8) ordained ministers selected after completing prescribed studies;

(9) a literature of its own;

(10) established places of worship;

(11) regular congregations;

(12) regular religious services;

(13) Sunday schools for religious instruction of the young; and

(14) schools for the preparation of its ministers.

*Spiritual Outreach Soc. v C.I.R.*, 927 F.2d 335, 338 (8th Cir. 1991). This Court has indicated that the constitutionality of the exemption is suspect, but not due to entanglement. Any entanglement argument based on the information required by the Department to determine what is a recognized church must fail.

The second item the Department requests is an explicit and specific statement of the church's or denomination's condemnation or disapproval of immunization. When an applicant submits an explicit and specific statement of the church's or denomination's condemnation or disapproval of immunization, it is accepted. If the applicant fails to provide a specific statement concerning immunization, the application is denied. The Department is ill-equipped to understand or interpret church teachings and surmise church doctrine. This policy guarantees minimal entanglement.

The third and last item requested is a certification of church membership. This certification consists of a notarized letter from an official of the church or denomination testifying that the parent or guardian is currently a member in good standing. If a church official states that the applicant is a member, that is accepted. The applicant is not required to prove her membership or beliefs to the Department beyond the letter from a church official.

The procedure that the Department has utilized, and that the plaintiff chose not to participate in, ensures minimal entanglement and is exceedingly simple. The Department utilizes only some of the fourteen criteria utilized by the Eighth Circuit to determine what constitutes a church. Finally, the procedure is hardly arbitrary and capricious. If a person supplies the information requested, an exemption is granted.

### III.  This Court Should Not Extend a Religious Exemption to the Plaintiff.

Should this Court determine that the exemption violates the First Amendment, that language found unconstitutional should be stricken, leaving the remaining portions of Arkansas's immunization law intact. The Arkansas General Assembly passed Act 244 of 1967 requiring all children, except as otherwise provided by law, to be properly immunized prior to being admitted to a public or private school. The plaintiff has made no argument that the language is vague or difficult to understand, and it is hard to conceive how it could be read as being anything but clear and unambiguous.

In the present case, Ms. Boone explicitly states that she is not a member of any church and feels that she is entitled to an exemption based on her personal beliefs. Her request cannot be honored based on the clear language of the statute. Neither could it be honored if no religious exemption remained. The dicta quoted previously that is found in *Smith* explicitly states that

"[t]he First Amendment's protection of religious liberty does not require [exemption from compulsory vaccination laws]." *Smith* at 889.

## CONCLUSION

The Defendant's motion should be granted for the reasons stated above and the Plaintiff's Second Amended Complaint should be dismissed with prejudice and her Petition for Permanent Injunction denied.

WHEREAS, defendant prays that his Motion for Summary Judgment be granted, for their costs, and for all other relief to which they may be entitled.

Respectfully submitted,

ROBERT M. BRECH, #98245
Associate General Counsel
Arkansas Department of Health
4815 West Markham Street, Slot 31
Little Rock, AR  72205-3867
Phone (501) 661-2297

Attorney for the Defendant

## CERTIFICATE OF SERVICE

I, Robert M. Brech, certify that I have served via U.S. mail, postage prepaid, a true and correct copy of the above and foregoing document on this 15th day of April 2002 to:

Gregory T. Karber, Esq.
Pryor, Robertson & Barry, P.L.L.C.
P.O. Drawer 848
Fort Smith, AR 72092-0848
Attorney for Plaintiff
Fax (501) 785-0254

William C. Brazil, Esq
913 Oak St.
Conway, AR 72032
Attorney for Cabot School District
Fax (501) 327-2183

Robert T. Moxley, Esq.
Gage & Moxley
P.O. Box 1223
Cheyenne, Wyoming 82003
Attorney for Plaintiff
Fax (307) 632-0401

Robert M. Brech