

FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

APR 29 2002

JAMES W. McCORMACK, CLERK
By:_____
DEP CLERK

# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## LITTLE ROCK DIVISION

**CYNTHIA BOONE, individually and
as Next Friend of ASHLEY BOONE,**                         **PLAINTIFF**

### Case No. 4:01CV00685 SWW

**FAY BOOZMAN, in his Official Capacity,
JOHN DOE 1 through JOHN DOE 20,
in their Official Capacities as agents, servants,
employees or Officials of the State of Arkansas,
Department of Health; and CABOT SCHOOL
DISTRICT,**                                                                          **DEFENDANTS**

### MEMORANDUM OF LAW IN SUPPORT OF
### PLAINTIFF'S RESPONSE IN OPPOSITION TO
### MOTION FOR SUMMARY JUDGMENT OF
### SEPARATE DEFENDANT FAY BOOZMAN

COMES NOW the above-named Plaintiff, by and through her attorneys, Robert T. Moxley of Gage & Moxley, Cheyenne, Wyoming, and Gregory T. Karber of Pryor, Robertson & Barry, PLLC, in opposition to the Motion for Summary Judgment filed by the separate defendant Faye Boozman (hereinafter "State's Motion"), and respectfully shows the Court as follows:

### INTRODUCTION

The State—represented by its named "official capacity" defendant, Dr. Boozman—has moved herein for summary judgment, making a short statement of fact, which, as far as it goes, is correct. The fact is that Cynthia Boone has sincerely held religious beliefs which compel her to oppose the vaccination of her teenage daughter against Hepatitis B.

But the State will deny an exemption, and contends that its restriction of exemptions to the adherents of "recognized" religions, pursuant to statue, is perfectly proper. It also denies that its evaluation of individual claims is an "entanglement." Finally, the State argues that First Amendment authorities from the Supreme Court mandate the denial of an exemption to the operation of the "mandatory" immunization statute. With all of the State's legal arguments, Plaintiff takes strong exception.

The Plaintiff in this matter will move in her own right for summary judgment on her First Amendment claims, and for this reason, will not belabor the affirmative points to be made forthwith, in support of that motion. Plaintiff will also move for summary judgment on the basis of the Fourteenth Amendment, and because the proper relief thereunder would be co-extensive to the proper First Amendment relief, Plaintiff has pointed out in her response to the State's motion that dismissal of Plaintiff's Second Amended Complaint cannot be had on the basis of the State's Motion.

## ARGUMENT

Essentially, the State claims that the constitution, and Supreme Court case law[1], will countenance **any** sort of compulsion to be vaccinated, whether it be criminal sanction[2] or

---

[1] The State relies on *Jacobson v. Massachusetts,* 197 U.S. 11 (1905) and *Zucht v. King,* 260 U.S. 174 (1922) for the proposition that forced vaccination for school children is "constitutional." In the former, the Court pronounced that the Public Health power to "mandate" vaccination, as reiterated by *Zucht* (page 176), is "within the police power."

[2] The provisions of A.C.A. § 6-18-702 (e) create a **criminal** sanction against non-exempt vaccine objection, stating, "Any person found guilty of violating the provisions of this section or the regulations promulgated by the State Board of Education or the division

2

deprivation of the right to an education. The statute features **both**, and even prohibits **private** schools from accepting vaccine objectors. Query, what would happen in a Unitarian church school, which would **support** vaccine objection, yet has no such doctrine? And does the State contend that the legislature is free to make vaccine objection a felony?

The absurdities, the ultimate implications of the State's arguments, are in fact what make them flawed. The State relies on a tax case[3] which upholds the legislative classification that limits tax exemptions to "churches"—as opposed to less formal gatherings of sincere religious people—in order to argue that limiting religious objection to vaccination is proper under the same template. But freedom from taxation on churches is in no wise analogous to freedom of conscience. Obviously, the tax exemption for churches has nothing to do with some "conscientious objection" to taxation. And far less "entanglement" is involved with the one-time qualification of a "church" for tax exempt status—presumably at the time of its organization—than is involved with the person-by-person evaluation of whether a vaccine objector belongs to an **anti-vaccine** "church."

Similarly, Plaintiffs find most curious the argument that the "secular purpose" of the "recognized religion" statute is to **avoid** the "abandonment" of "neutrality," and prevent the evil of "promoting a particular point of view in religious matters." (State Brief at 6.) Query,

---

for the enforcement hereof shall be guilty of a misdemeanor."

[3]*Spiritual Outreach Soc. v. C.I.R.*, 927 F.2d 335 (8th Cir. 1991).

3

how in the **world** can a statute which is interpreted to exempt the Christian Scientist, but denies exemption to the Jehovah's Witnesses, a statute which exempts the member of the Church of the First Born yet denies exemption to the objecting Methodist[4], be found **not** to "promote a particular point of view"?!?

Perhaps the most curious State argument is its citation to *Board of Education of Kiryas Joel Village School District v. Grumet*, 512 U.S. 687 (1994) to support its "neutrality" argument. At page 704 therein, as part of long discussion, the Supreme Court stated "we have frequently relied explicitly on the general availability of any benefit provided religious groups or individuals in turning aside Establishment Clause challenges." And it concluded that the state of New York had violated the Establishment Clause where "the benefit flows only to a single sect." *Id.* at 706.

It is simply not the case that the "constitutionality" of a 1905 case upholding a criminal sanction, for refusal to submit to a **smallpox** vaccination at a time of declared emergency, is dispositive herein. And the *Smith* case[5] does not constitute all the authority the State needs for its assertion that no religious exemption is due for a citizen's objection to **dozens** of "prophylactic" vaccinations in the year 2002. The *Smith* Court itself bluntly stated, in fn. 3 at 886, "we strictly scrutinize governmental classifications based on religion,"

---

[4] For these applications of the statute, see the preliminary injunction hearing transcript, October 15, 2001, for the testimony of Irma Breedlove at page 19.

[5] *Employment Division, Oregon Department of Human Resources v. Smith*, 494 U.S. 872 (1990).

4

citing *McDaniel v. Paty*, 435 U.S. 618 (1978); and *Torcaso v. Watkins*, 367 U.S. 488 (1961). Simply, the Arkansas immunization statutes are not neutral to religion, and constitute overt legislative "classification" on the basis of religion.

*Smith,* moreover, when it took away the "compelling interest" test for **simple** claims of religious exemption (*i.e.,* claims to be exempted from the commands of "neutral" legislation), created a new category of compelling analysis cases, those where "hybrid rights" are present. *See Cornerstone Bible Church v. City of Hastings,* 948 F.2d 464, 472 (8th Cir. 1991). And *Smith* is **most** clear that "parental rights," when combined with religious claims, are indeed hybrid rights, invoking compelling interest analysis. The Court in *Smith* found that the facts of that unique case did not present "such a hybrid situation, but ***a free exercise claim unconnected with*** any communicative activity or ***parental right.***" *Smith*, 494 U.S. at 882 (emphasis added).

Nobody was there to remind the *Smith* Court that vaccination exemption claims **are** an invocation of hybrid rights. Obviously, its citation of *Cude v. State*, 237 Ark. 927, 377 S.W.2d 816 (1964), was *obiter dictum*. In fact, the discussion of *Cude* in *Smith* was with regard to a long litany of **hypothetical** situations—Justice O'Connor called it a "parade of horribles"—that she perceived the majority **feared** could burden their docket, if compelling interest analysis were allowed to remain universal in religious freedom cases. Most significantly, the majority concluded that **if** compelling interest scrutiny were universally applicable in religious freedom cases, that the resulting "presumption of invalidity" **would**

5

**invalidate** such programs as vaccination, which, in the words of the *Smith* Court, constitute "regulation of conduct *that does not protect an interest of the highest order.*" *Smith*, 494 U.S. at 888, emphasis added.

The controlling case for purposes of compelling interest analysis is therefore *Church of the Lukumi Babalu Aye,* 508 U.S. 520, 546 (1993). It portends no success for the state statute herein: "(a) law that targets religious conduct for distinctive treatment or advances legitimate governmental interests only against conduct with a religious motivation will survive strict scrutiny only in rare cases." *Id.* Also at 546, the *Lukumi* Court stated, "A law burdening religious practice that is not neutral *or* not of general application must undergo the most rigorous of scrutiny. To satisfy the commands of the First Amendment, a law restrictive of religious practice must advance 'interests of the highest order' and must be narrowly tailored in pursuit of those interests."

And thus *Lukumi* will mandate relief. "The compelling interest standard that we apply once a law fails to meet the *Smith* requirements is not 'water[ed] . . . down' but 'really means what it says.'" *Id. quoting Smith*, 494 U.S. at 888.

This Court will readily see the other legal fallacies of Dr. Boozman's motion for summary judgment. The State does indeed advance the interests of certain religions, giving rise to improper "endorsement." *See County of Allegheny v. ACLU*, 492 U.S. 573, 592 (1989) (requiring the Court to examine "whether the challenged governmental practice either has the purpose or effect of 'endorsing' religion"). Obviously, "recognition" is the avatar

of "endorsement." *Allegheny* holds that government unconstitutionally endorses religion whenever it appears to "take a position on questions of religious belief," or makes "adherence to a religion relevant in any way to a person's standing in the political community." *Id.* at 594.

As will be demonstrated by the Plaintiff's forthcoming summary judgment motions, respectively, on First and Fourteenth Amendment grounds, compelling interest analysis will invalidate the "mandatory" aspect of a state-sponsored immunization program, in the absence of a public health emergency. Compelling interest analysis requires just that result.

## CONCLUSION

Dr. Boozman's summary judgment motion must be denied.

Respectfully submitted this 26 day of April, 2002.

| | | |
|---|---|---|
| PRYOR, ROBERTSON<br>& BARRY, PLLC<br>315 North 7th Street<br>P.O. Drawer 848<br>Fort Smith, AR 72902-0848<br>(479) 782-8813 | for | ROBERT T. MOXLEY #5-1726<br>GAGE & MOXLEY, PC<br>623 West 20th Street<br>Post Office Box 1223<br>Cheyenne, Wyoming 82003-1223<br>(307) 632-1112 |

Gregory T. Karber
Ark. Bar No. 79110
Attorney for Plaintiff

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served a copy of the foregoing document, to the entity or entities listed below, by placing same into the hands of the delivery service designated below, on this 26 day of April, 2002.

UPS Next Day Delivery [  ] **United States Mail** [  ] Federal Express [  ] Overnight Mail [  ] _____ [  ]

WILLIAM C. BRAZIL, ESQ.
913 Oak Street
Conway, Arkansas 72032

ROBERT M. BRECH, ESQ.
Associate General Counsel
Arkansas Department of Health
4815 Markam Street, Slot 31
Little Rock, Arkansas 72205-3867

C. Brian Meadors